Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9511 | **DATE** | 5/9/2003 |
| **CASE TITLE** | Wilson vs. Ameritech | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Ameritech's motion for summary judgment is granted. Status hearing set for 5/20/03 is stricken. Pretrial conference set for 6/18/03 is stricken. Jury Trial set for 7/21/03 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 1 2 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 52 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | 5/9/2003 date mailed notice | |
| TH | courtroom deputy's initials | | |
| | | TH mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
MAY 1 2 2003

| | |
|---|---|
| MONET WILSON, | ) |
| Plaintiff, | ) )  ) |
| | ) No. 01 C 9511 |
| v. | ) ) |
| AMERITECH, an SBC COMPANY, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

Plaintiff Monet Wilson filed suit against Ameritech following her termination, alleging various forms of discrimination and retaliation. Ameritech has moved for summary judgment. For the reasons stated herein, Ameritech's motion is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the evidence presented to the Court shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742 (7th Cir. 2003); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Once the movant has met this burden, it is up to the non-movant to presents "definite,

52

competent evidence to rebut the motion" and show that there is an issue of material fact. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## LOCAL RULE 56.1 REQUIREMENTS

According to the Local Rules, a party opposing summary judgment shall file "a concise response to the movant's statement [of material facts] that shall contain . . . a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(B). Plaintiff did not file such a statement. Instead, she attempted to insert additional facts in her memorandum of law and response to Defendant's 56.1 statement. These methods are inappropriate, because they circumvent the adversarial process and harm the otherwise efficient flow of the Court's docket. *See Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316-17 (7th Cir. 1995); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court."). The Court chooses to do what other courts have done in this circumstance – exercise its discretion by disregarding Wilson's improperly-submitted additional facts. *See McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998); *Midwest Imports*, 71 F.3d at 1313; *Malec*, 191 F.R.D. at 584. Accordingly, the Court takes the factual record for the purposes of deciding this motion solely from Defendant's Local General Rule 56.1(a)(3) Statement of Uncontested Material Facts (R. 32-1), except in those few instances where a

statement was properly rebutted by Plaintiff's Local Rule 56.1(b)(3)(A) Response. (*See* R. 50-1, Pl.'s Response; R. 51-1, May 7, 2003 Order.)

## UNDISPUTED FACTS

### I. Wilson's Employment

Monet Wilson is an African-American woman. (Def.'s Facts ¶ 1.)[1] Ameritech employed her as an associate at its Consumer Services Call Center in Oak Brook, Illinois, from September 7, 1999 through January 11, 2001. (*Id.* ¶ 6.)

### II. Ameritech's Attendance Policies

Ameritech had attendance guidelines during Wilson's employment. (Def.'s Facts ¶ 26.) Wilson was aware of these guidelines, and Ameritech counseled her about the importance of maintaining a satisfactory attendance record. (*Id.* ¶ 32.) The guidelines defined the type of absences that an associate may incur, the threshold for maintaining satisfactory attendance, and the progressive disciplinary steps that Ameritech could take when an associate's absences exceeded the threshold. (*Id.* ¶ 27.) If an associate missed work for reasons other than vacation or an excused absence, it was a chargeable absence that was counted against the associate's attendance record. (*Id.* ¶¶ 28-29.) Ameritech's progressive discipline for excessive absences started with a written warning, moved to a suspension, and ended in dismissal. (*Id.* ¶ 30.)

Ameritech kept associates' attendance records in its Consumer Services facility. (Def.'s Facts ¶ 15.) Ameritech noted each time that an associate was tardy or absent, along with any reason for the occurrence. (*Id.* ¶¶ 21, 23.) Ameritech maintained the attendance records in the

---

[1] The Court cites to Defendant's Local General Rule 56.1(a)(3) Statement of Uncontested Material Facts (R. 32-1) within this opinion simply as "Def.'s Facts."

3

same manner for all associates. (*Id.* ¶ 24.) Cathleen Tuttle monitored associate attendance at that facility while Plaintiff was with Ameritech. (*Id.* ¶ 16.)

### III. Wilson's Attendance Problems

Wilson incurred many chargeable absences and tardies while with Ameritech. She first was absent from work on December 16, 1999. (Def.'s Facts ¶ 33.) Her attendance problems grew in February 2000. She missed work entirely on February 10 and 11. (Def.'s Facts ¶¶ 33-34.) In addition, Wilson missed parts of her workdays on February 12 and 14. (*Id.* ¶¶ 34-35.) As a result, Ameritech issued Wilson a First Written Warning Letter on February 16. (*Id.* ¶ 36.) That letter advised Wilson that her attendance record was unsatisfactory and that further chargeable absences or tardies could lead to her termination. (*Id.*)

Ameritech issued Wilson a Final Written Warning Letter on February 22 because of another chargeable absence from the previous day. (Def.'s Facts ¶¶ 37-38.) Again, the letter advised Wilson that further absences or tardies could lead to her termination. (*Id.*) After a union grievance, Ameritech reduced this Final Written Warning Letter to a First Written Warning Letter in April 2000. (Def.'s Facts ¶ 43.)

Wilson continued to have attendance problems in March and April 2000. She was absent from work March 8 to 10 and March 20 to 23. (*Id.* ¶¶ 39, 41.) She left work early on March 13. (*Id.*) She also missed work due to disability absences from March 24 through April 2. (*Id.* ¶ 42.) Ameritech did not discipline her for these absences. (*Id.* ¶¶ 41-42.)

Wilson missed additional days of work in May 2000. She left work early on May 1 and was absent the next two days. (Def.'s Facts ¶¶ 44-45.) Ameritech issued Wilson another Final Written Warning Letter on May 4. As with the other warnings, this one advised her that any

4

more chargeable absences or tardies could lead to termination. (*Id.* ¶ 46.)

Because of her father's illness, Wilson missed work on three days at the end of August 2000. (Def.'s Facts ¶ 47.) Although this time was recorded as chargeable, Ameritech took no further corrective action against her. (*Id.*)

Beginning in September 2000, Ameritech placed the Consumer Services facility in mandatory overtime. (Def.'s Facts ¶ 48.) On September 11, Wilson was eight minutes late for the beginning of her shift. (*Id.* ¶ 49.) This classified as chargeable tardy, according to Ameritech's attendance guidelines. (*Id.* ¶ 50.) Ameritech decided to suspend Wilson for three days. (*Id.* ¶ 51.) She served the suspension on September 13, 14, and 20. (*Id.*) Because she had already received several written warnings and a suspension, the next step in Ameritech's attendance guidelines' progressive discipline process was termination. (*Id.* ¶ 56.)

Wilson suffered misfortunes that caused her to miss work in September and October 2000. On September 15, Wilson missed work to attend her grandmother's funeral. (Def.'s Facts ¶ 52.) Ameritech did not charge her for this absence. (*Id.* ¶ 52.) On October 16, Wilson notified Ameritech that her father had died. (*Id.* ¶ 53.) Although the collective bargaining agreement only allowed her two days of bereavement leave, Wilson was absent from work for seven days. (*Id.* ¶ 54.) Ameritech, however, did not progress Wilson's discipline due to these absences. (*Id.*)

Wilson had three chargeable absences in late October 2000. She was absent for most of the day of work on October 25 and did not work at all on October 26 and 27. (Def.'s Facts ¶ 55.) When Wilson returned to work, Tuttle handed her a medical certification form. (*Id.* ¶ 117.) Ameritech required all employees to complete that form in order to have a FMLA leave request approved. (*Id.* ¶ 118.)

Wilson missed work due to disability absences from October 30 to December 20. (Def.'s Facts ¶ 59.) When she returned, Ameritech informed her that it was placing her on suspension pending dismissal for violating its attendance guidelines. (*Id.* ¶ 60.) At the time, Wilson had accumulated more than 119 hours of absences plus one tardy in 12 months of employment. (*Id.* ¶ 61.)

On January 8, 2001, Ameritech sent Wilson a letter informing her that her FMLA leave request for October 25 to 27, 2000 had been denied because she had not provided a medical certification for her absences. (Def.'s Facts ¶ 120.) On January 9, 2001, Wilson attended a dismissal hearing, where Ameritech gave Wilson another three days to submit a medical certification for her October 25 to 27, 2000 absences. (*Id.* ¶ 121.) She never submitted that certification. (*Id.* ¶ 122.) Ameritech terminated her on January 11, 2001. (*Id.* ¶ 123.)

## IV. Tom Sauer Actions

Tom Sauer, who was a coach in a separate office that supervised a different team, did not have any input into decisions regarding the classification of Wilson's absences or performance. (Def.'s Facts ¶ 95.) Sauer worked on a different floor and did not have much contact with Wilson. (*Id.* ¶ 96.) Wilson alleges that Sauer engaged in three racially inspired actions. First, he stated that he could be the white Jimmy Walker and imitated a "Good Times" walk. (*Id.* ¶ 94.) Second, he asked several employees, including Wilson, whether the group was "going to get some chicken" and stated that "Harold's Chicken is not around here." (*Id.*) Finally, he commented, when he heard that Wilson would not be able to attend a Saturday work-related event, that he "didn't know there was (sic) cosmetology classes on Saturdays." (*Id.*) Wilson never complained to Ameritech about Sauer's actions. (*Id.* ¶ 97.)

V.  **Wilson Files EEOC Charges**

On February 8, 2001, Wilson filed a discrimination charge with the EEOC, alleging that Ameritech discriminated against her on the basis of her sex and race, and retaliated against her. (Def.'s Facts ¶ 3.) After the EEOC issued a right to sue letter, Wilson filed a complaint with this Court on the same basis and added a disability discrimination claim. She has since conceded that she cannot maintain her disability discrimination and retaliation claims.

## ANALYSIS

Ameritech moves for summary judgment on several grounds. First, it claims that Wilson cannot maintain her FMLA, racial discrimination, or racial harassment claims because her complaint failed to put it on notice that she was seeking such relief. Second, Ameritech argues that Wilson's sexual and racial discrimination claims cannot survive because Wilson can neither establish a *prima facie* case of discrimination nor show that its proffered reasons for terminating her are a pretext for discrimination. Third, Ameritech claims that Wilson has not shown that a genuine issue of material fact exists as to whether it violated FMLA.

I.  **Liberally Construing Her Complaint, Wilson Put Ameritech On Notice Of Her Racial Discrimination And FMLA Claims, But Did Not Put Ameritech On Notice Of Her Racial Harassment Claim**

Wilson filed a *pro se* complaint on December 14, 2001. She later retained counsel, but her attorney failed to seek leave to amend her initial complaint. Because of this oversight, the parties are left to fight about whether Wilson's *pro se* complaint put Ameritech on notice of three of the claims that she is now pursuing – racial discrimination, racial harassment, and a violation of the Family Medical Leave Act. A plaintiff may not plead a new cause of action in a response to a summary judgment motion. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir.

1997) (a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

To put a defendant on notice that she is seeking to recover on a claim, a plaintiff must "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999). In the discrimination context, a plaintiff who has simply alleged that she was terminated because of an unlawful reason has satisfied this notice pleading requirement. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (statement that "I was turned down for a job because of my race" is sufficient); *Oxman v. WLS-TV*, 595 F.Supp. 557, 562-63 (N.D. Ill. 1984) (Plaintiff's allegation that he was fired "on the basis of his age" was adequate).

On top of these considerations, the Court must recognize that Wilson filed her complaint *pro se*. Allegations of a *pro se* complaint are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Accordingly, *pro se* complaints are liberally construed. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988). Because of the stage of this proceeding, the Court is concerned with whether Ameritech was on notice of one of Wilson's claims – not whether Wilson stated a legally cognizable claim.

### A. Ameritech Was On Notice That Wilson Claimed That She Was Terminated Because Of Racial Discrimination

A review of her *pro se* complaint shows that Wilson did put Ameritech on notice of her termination due to racial discrimination claim, albeit barely. Wilson's *pro se* complaint is a four-page single-spaced document. Within the text of the complaint, Wilson does not provide any

allegations concerning race at all, much less offer up details as to the context of any racial discrimination that she suffered. Wilson's claim that Ameritech terminated her because of her race survives, however, because of her use of a footer at the bottom of each of the four pages of her complaint. She states in the footer, "Dismissal on the basis of gender and racial discrimination." (R. 1-1, Complaint.) Given her *pro se* status at the time of her filing and the minimal requirements of pleading a claim for discrimination pursuant to *Bennett*, the Court finds that Ameritech was on notice of Wilson's claim that it termination her because of racial discrimination.

### B. Ameritech Was Not On Notice That Wilson Claimed She Was Subjected To A Hostile Work Environment

Wilson asserts that she was subjected to a hostile work environment because of racially-motivated comments made by Sauer. Although Wilson placed Ameritech on notice of her termination claim, the same cannot be said for this allegation of racial harassment. Termination and hostile work environment claims are separate entities. *See generally National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-116, 122 S.Ct. 2061, 2073-74, 153 L.Ed.2d 106 (2002). While termination claims are based on discrete acts of discrimination, hostile work environment actions arise where the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (internal citations omitted). Therefore, that she claimed that Ameritech dismissed her because of racial discrimination does not lead to Ameritech being on notice from her complaint that she believed that she was subjected to a

hostile work environment.

Even liberally construing the complaint, Wilson did not put Ameritech on notice that she was claiming the existence of a hostile work environment. In her complaint, Wilson does not mention race, except for the footer that claims she was dismissed because of racial discrimination. Wilson does not allege that Ameritech engaged in intimidation, ridicule or insult through racial comments. Accordingly, Wilson's complaint failed to put Ameritech on notice that she was pursuing a hostile work environment claim.[2] She cannot pursue such a claim through her summary judgment brief. *See Speer*, 123 F.3d at 665.

### C. Ameritech Was On Notice Of Wilson's FMLA Claim

Liberally construing her complaint, Wilson did put Ameritech on notice of her claim that Ameritech violated the Family Medical Leave Act. The FMLA prohibits employers from interfering with an employee's attempt to exercise her right to a leave in certain contexts. *See* 29 U.S.C. § 2615. Wilson alleges in her complaint that she and her doctors filled out her FMLA forms, that she sent these forms to Ameritech, and that Ameritech did not approve of her leave. Ameritech clearly was on notice of Wilson's FMLA claim.

## II. Ameritech Is Entitled To Judgment On Wilson's Discrimination Claims

Moving from Wilson's allegations in her complaint to the facts before the Court on summary judgment, Ameritech argues that it is entitled to judgment as a matter of law because

---

[2] The Court does note that even if she would have put Ameritech on notice of her hostile work environment claim, that claim would not survive summary judgment. Plaintiff's claim is premised upon three sets of comments by Sauer during her term of employment. These comments are not severe or pervasive enough to alter the conditions of her employment. *Cf. Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989 (7th Cir. 2002) (isolated comments over a period of two years did not alter the conditions of plaintiff's employment).

Wilson cannot establish a claim for racial or sexual discrimination. Because Wilson has not introduced direct evidence of discrimination, she must proceed under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This requires an initial showing by Wilson that (1) she was a member of a protected class, (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) Ameritech treated similarly situated employees who were not members of her protected class more favorably. *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002). If Wilson makes this *prima facie* showing, the burden then shifts to Ameritech to articulate a legitimate, nondiscriminatory reason for its decision. *Id*. Once it articulates this reason, Ameritech rebuts the presumption of discrimination, shifting the burden back to Wilson to show that its proffered reason was merely a pretext for discrimination. *Id*. Despite this burden-shifting approach, the ultimate burden of proof remains at all times with Wilson, as the plaintiff. *Id*.

### A. Wilson cannot Establish a *Prima Facie* Case of Racial or Sexual Discrimination

Ameritech argues that Wilson cannot establish a *prima facie* case of discrimination because she cannot show that Ameritech treated a similarly situated employee who was not a member of her protected class more favorably. To meet her burden with respect to this element, Wilson must show this employee is directly comparable to Plaintiff in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002). This normally entails a showing "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating

11

circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Wilson has not come forward with any such evidence. Wilson argues that a white female employee was treated more favorable during the death of her mother than was Wilson, who Ameritech purportedly "humiliated and spok[e] to in hash (sic) terms." This contention suffers from many basic and fatal flaws. First, the evidence is not properly before the Court because Wilson did not include it in a statement of additional facts pursuant to Local Rule 56.1(b)(3). *See supra* at 1-2. Second, this allegedly similarly situated employee is female, and thus within Wilson's class for the purposes of her sexual discrimination claim. Third, Wilson does not explain how this employee is directly comparable in all material respects to her. To wit, Wilson does not explain what position this employee held, who her supervisor was, whether she was subject to the same attendance guidelines, whether she had the similar attendance problems, whether she had received a Final Written Warning Letter, or whether she had missed work after receiving the Final Written Warning Letter. Wilson, therefore, has utterly failed to establish that a similarly situated employee outside of her class was treated more favorably by Ameritech.

### B. Wilson cannot show that Ameritech's Proffered Reason for Termination was a Pretext for Discrimination

Ameritech also argues that Wilson cannot show that its proffered reason for terminating her was a pretext for discrimination. To prove that a proffered reason is pretextual, a plaintiff must show it to be "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). Ameritech maintains that it terminated Wilson's employment because of her absences from October 25 to 27, 2000. Wilson

12

claims that this excuse is merely pretextual because her absences should have been covered under the FMLA.

Wilson argues that Ameritech engaged in a scheme to ensure that she would not receive FMLA leave by purposefully mailing her FMLA forms to the wrong address, thus eliminating any chance of her receiving FMLA leave for those days she was absent. Wilson's contentions do not hold water. Ameritech handed – not mailed – the FMLA medical certification forms to Wilson. Ameritech denied her FMLA claim because Wilson did not submit the medical certification in a timely fashion. Even if Ameritech had erroneous mailed this certification form, it cured the mistake at her dismissal hearing by providing Wilson with three more days to submit the certification. She failed to do so, and Ameritech terminated her. Accordingly, the undisputed facts show that Ameritech's proffered reason for termination was not a pretext for discrimination. Ameritech is entitled to judgment on Wilson's discrimination claims.

### III. Wilson Has Not Introduced Evidence Showing That Ameritech Violated The FMLA

In order to maintain a claim under FMLA in this district, a plaintiff must establish that (1) she is an eligible employee under FMLA, (2) defendant is an employer under FMLA, (3) plaintiff was entitled to leave under FMLA, and (4) defendant engaged in some prohibited act under FMLA. *See Dey v. Marshall*, No. 01 C 9810, 2002 WL 773989, at *2 (N.D. Ill. Apr. 29, 2002); *Edwards v. State of Illinois*, No. 98 C 4334, 1999 WL 59848, at *3 (N.D. Ill. Feb. 3, 1999); *Dormeyer v. Comerica Bank - Illinois*, No. 96 C 4805, 1997 WL 403697, at *2 (N.D. Ill. July 15, 1997). Ameritech argues that Wilson has not established that she is an eligible employee or that it engaged in prohibited activity. This Court agrees with both assessments.

## A. Wilson Failed to Establish that she is an Eligible Employee under FMLA

To be eligible under the FMLA, an employee must be employed "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(ii). Wilson has failed to introduced any evidence of the number of hours she spent working for Ameritech. Accordingly, she has failed to show that she was an eligible employee under FMLA – an essential element to her claim.

## B. Wilson Failed to Establish that Ameritech Engaged in a Prohibited Act under the FMLA

Wilson argues that Ameritech violated the FMLA by denying her claim for a leave from October 25-27, 2000. Ameritech maintains that it denied her FMLA request after she failed to submit a medical certification. Ameritech points out that its requirement for its employees to submit such a certification is expressly authorized by the statute. According to the FMLA:

> An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee, as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer.

29 U.S.C. § 2613. The undisputed facts show that Ameritech handed the FMLA certification forms to Wilson and that she failed to submit them, despite an extension of time to do so at her dismissal hearing. Ameritech was entitled to deny her FMLA leave without that certification. She has therefore failed to establish that Ameritech engaged in an act prohibited by the FMLA. Wilson has failed to create a genuine issue of material fact with respect to two necessary elements. Accordingly, Ameritech is entitled to judgment as a matter of law on this FMLA claim.

14

## CONCLUSION

Wilson has not met her burden of establishing a *prima facie* case of either racial or sexual discrimination. She also has not shown that Ameritech's reason for terminating her employment is a pretext for discrimination. Finally, Wilson has failed to produce evidence of essential elements of her FMLA claim. Accordingly, the undisputed facts show that Ameritech is entitled to judgment as a matter of law on all of Wilson's claims.

DATED: May 9, 2003             ENTERED:

                               _____
                               AMY J. ST. EVE
                               United States District Judge